UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRENDA JANEEN DALY, individually,<br><br>    Plaintiff,<br><br>    v.<br><br>CAZIER ENTERPRISES, INC., a regular corporation licensed to conduct business in the State of Washington, d/b/a SUBWAY, RUSSELL LEE CAZIER and JANE DOE CAZIER, husband and wife, individually, and the marital community thereof, NOE VALENCIA and JANE DOE VALENCIA, husband and wife, individually and the martial community thereof,<br><br>    Defendants. | NO. CV-05-5059-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

On September 27, 2006, the Court heard oral argument in the above-captioned matter. Janet Taylor appeared on behalf of Plaintiff Brenda Daly, and Sheehan Sullivan Weiss appeared on behalf of Defendants Cazier Enterprises Inc., Russell Cazier, Jane Doe Cazier, and Noe Valencia. Before the Court was Defendants' Motion for Summary Judgment (Ct. Rec. 43). After hearing oral argument and considering the submitted materials

1

and relevant authority, the Court was fully informed. This Order serves to memorialize and supplement the Court's oral ruling.

## I. Background[1]

On June 1, 2003, Cazier Enterprises Inc., a family-run business that operates Subway sandwich franchises, hired Brenda Daly, a white college student. Ms. Daly worked at a number of the stores and was asked to substitute in other stores. In early July, Mr. Cazier became concerned about the number of customer complaints regarding lack of customer service coming out of the "Burden" store where Ms. Daly usually worked. Mr. Cazier brought in a new manager to that location. On July 7, 2003, the new manager, Ms. Kristina Caserez, held a store wide employee meeting emphasizing the importance of customer service and warned employees that they could lose their jobs if the situation did not improve.

On July 8, 2003, Ms. Daly worked the afternoon/evening shift at the Burden store. Noe Valencia, a Mexican-American supervisor who normally worked at a different location was also on duty. At one point during the shift, Ms. Daly was in the back of the store when she asked Mr. Valencia, "Do you got it, [sic] or should I get it?" with regard to a customer. Mr. Valencia took care of the customer but later told Ms. Daly that the way she asked the question, in front of the customer, would make other Mexicans think she did not like her job and was lazy. He advised her that she should ask her coworkers, "Would you like help?" Soon after

---

[1] This background is based on the Joint Statement of Uncontroverted Facts (Ct. Rec. 66). The facts detailed in this section are either not in dispute or are construed in favor of Plaintiff, the non-moving party.

this conversation, Ms. Daly went into the back of the store to get a bag of mustard.  As she was returning to the front, she remarked that the bag she was carrying "feels just like a baby."  In response, Mr. Valencia asked Ms. Daly whether she had any children and whether she was married.  She remarked that she did not have time for children or marriage as she was in college.  Mr. Valencia said that he was married when he was 20 years old and that he knew other people who had children at that age.  At some point during the shift Ms. Daly told Mr. Valencia she was uncomfortable with the questioning.

Later that evening, Mr. Valencia had a conversation with another Hispanic supervisor, Guadalupe Saenz.  Ms. Daly, who speaks Spanish, overheard Mr. Valencia telling Ms. Saenz about the conversation he had had with Ms. Daly regarding her interaction with the customer.  Ms. Daly overheard him say that she was very lazy and she stopped listening because the conversation was making her upset.

On July 10, 2003, Ms. Daly wrote a letter to Mr. Cazier complaining about her interactions with Mr. Valencia during the July 8, 2003, shift.  She described the conversations with Mr. Valencia and the conversation between Mr. Valencia and Ms. Saenz.  Ms. Daly stated in her letter that she considered talking to her manager but she feared that the manager's relationship with Mr. Valencia and Ms. Saenz might put her job at risk.  She wrote that Mr. Valencia made her feel uncomfortable and suggested that she did not want to work with him any more.

Mr. Cazier received the complaint on July 11, 2003, and investigated the incident.  That day, he met with Ms. Daly.  Kristina Caserez and Mr. Cazier's wife, Joy Cazier, also attended the meeting.  Ms. Daly indicated


that her coworkers had been harassing her. To Ms. Daly, the meeting seemed like an interrogation and Ms. Caserez tested Ms. Daly's Spanish. Mr. Cazier asked what outcome Ms. Daly would like, and she requested not to have to work with Mr. Valencia again.

Subsequent to the complaint, Ms. Daly's work hours were decreased. On July 29, 2003, Cazier Enterprises terminated Ms. Daly. In Mr. Cazier's letter to Ms. Daly, dated July 29, 2003, he indicates that Ms. Daly's complaint was one factor in his decision to terminate her. On June 1, 2005, Ms. Daly filed suit against the Company, Mr. Cazier, his wife, and Mr. Valencia.

## II. Summary Judgment Standard

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When considering a motion for summary judgment, a court may not weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue for trial exists only if "the evidence is such that a reasonable jury could return a verdict" for the party opposing summary judgment. *Id*. at 248. In other words, issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under the governing law." *Id.* There is no genuine issue for trial if the

evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249.

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson*, 477 U.S. at 248. This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

**III. Harassment Claim Under Washington's Law Against Discrimination**

Plaintiff alleges a claim under RCW 49.60 et seq., Washington's Law Against Discrimination ("WLAD"). RCW 49.60.180(3) prohibits an employer from "discriminat[ing] against any person in compensation or in other terms or conditions of employment because of . . . sex." The Washington State Supreme Court has interpreted this statute as prohibiting sexual harassment in employment. DeWater v. State, 130 Wash. 2d 128, 134 (Wash. 1996). Sexual harassment can be either quid pro quo harassment (extortion of sexual favors in exchange for a job benefit) or a hostile work environment claim. Id.

In order to prove a hostile work environment claim under WLAD the plaintiff must show (1) the harassing conduct was unwelcome; (2) the conduct was because of the employee's sex; (3) the harassment affected the terms or conditions of employment; and (4) the conduct can be imputed to the employer.  Id.  Under the third element, the conduct must be sufficiently severe and persistent in order to affect the terms or conditions of employment.  Kahn v. Salerno, 90 Wash. App. 110, 125 (1998).  "Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law."  Glasgow v. Georgia-Pacific Corp., 103 Wash. 2d 401, 406 (1985).  Here, Plaintiff's claim is based on conduct which occurred during several conversations in the course of one shift.  Therefore, the alleged harassment did not affect the terms or conditions of employment as required to make out a claim under WLAD.  Accordingly, Defendant's Motion for Summary Judgment with respect to Plaintiff's claim of harassment under WLAD is granted.

### IV. Harassment Claim Under 42 U.S.C. § 1981

Title 42 of the United States Code § 1981 ensures that individuals will receive equal protection under the law.  While § 1981 does not explicitly reference employment, there is broad consensus that hostile work environment claims may be brought under § 1981. See  Manatt v. Bank of Am., 339 F.3d 792, 797 (9th Cir. 2003); *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 68-69 (2d Cir. 2000); *Danco Inc. v. Walmart Stores Inc.,* 178 F.3d 8, 13 (1st Cir. 1999).  These cases also establish that the principles used to determine whether a violation of § 1981 has occurred is based on the same principles as those used to

6

determine whether there has been a violation of Title VII of the Civil Rights Act of 1964, the equal opportunity employment provision, which can be found at 42 U.S.C. § 2000e.  *Manatt,* 339 F.3d at 797; *Whidbee,* 223 F.3d at 69; *Danco Inc.,* 178 F.3d at 13.  As the elements for demonstrating a claim under 42 U.S.C. § 2000e, commonly referred to as Title VII, are well established, the Court will look to Title VII claims in order to analyze Plaintiff's § 1981 cause of action.  Unlike Title VII, § 1981 specifically prohibits racial discrimination and does not apply to discrimination based on sex.  *Shah v. Mt. Zion Hosp. & Med. Ctr.,* 642 F.2d 268, 272 (9th Cir. 1981); *Jones v. Bechtel,* 788 F.2d 571, 574 (9th Cir. 1986).

In order to make out a prima facie hostile work environment claim under either Title VII or § 1981, Plaintiff must demonstrate "(1) she was 'subjected to verbal or physical conduct' because of her race, (2) 'the conduct was unwelcome,' and (3) 'the conduct was sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive work environment.'"  *Manatt,* 339 F.3d at 797 (quoting *Kang v. U. Lim Am., Inc.,* 296 F.3d 810, 817 (9th Cir. 2002)).  Far more offensive conduct than the conduct alleged in this case has been held not to create an abusive work environment.  *See Vasquez v. County of Los Angeles,* 307 F.3d 884, 893 (9th Cir. 2002) (holding that despite claims that Plaintiff had "'a typical Hispanic macho attitude' and that he should consider transferring to the fields because 'Hispanics do good in the field,'" plaintiff had not made out an abusive work environment claim); *Kortan v. Cal. Youth Auth.,* 217 F.3d 1104, 1107-11 (9th Cir. 2000) (finding where a supervisor referred to women as "bitches" and "histrionics" and

7

1 referring to a specific female as a "madonna," "regina," and a
2 "castrating bitch," plaintiff had not demonstrated an abusive work
3 environment). The conduct alleged in the instant case falls short of
4 conduct that is severe or pervasive enough to create an abusive work
5 environment. Therefore, Plaintiff's claim of harassment under § 1981
6 fails. Accordingly, Defendant's Motion for Summary Judgment with respect
7 to Plaintiff's § 1981 hostile work environment claim is granted.

## V. Retaliation Claim Based on WLAD

Plaintiff argues she is entitled to relief based on a theory of retaliation. RCW 49.60.210 prohibits employers from discharging employees who "oppose any practices forbidden by this chapter . . . ." Washington courts have interpreted the statute to require that an employee show, (1) that she was engaged in a statutorily protected opposition activity; (2) she was discharged; and (3) there is a causal connection between the opposition and the discharge. *Graves v. Department of Game,* 76 Wash. App. 705, 712 (1994). Defendants acknowledge that the last two elements are met in this case; therefore, the first element is the only issue in this case.

"To show that she engaged [in] a 'statutorily protected activity' [Plaintiff] need only prove that her complaints went to conduct that was at least arguably a violation of the law." *Estevez v. Faculty Club of University of Washington,* 129 Wash. App. 774, 798 (2005). The Washington State Appellate Court for Division III held that the test of whether a plaintiff engaged in statutorily protected opposition activity is based on whether the employee reasonably believed the employment practices were discriminatory. *Renz v. Spokane Eye Clinic, P.S.,* 114 Wash. App. 611,

619 (2002). While the underlying harassment need not be proved, the complaint must reference conduct that was at least arguably a violation of the law, or conduct that a plaintiff reasonably believed was discriminatory.

Courts have found an arguable violation of the law where the employee complained of *ongoing* conduct that included the use of foul and derogatory language, sexual vulgarities, and hand gestures with sexual overtones, or where the employee was concerned about a coworker stalking her. *See Kahn,* 90 Wash. App. at 119-128; *Estevez,* 129 Wash. App. at 798-799. However, an employee who submitted a memorandum that suggested his employer discriminated against women and minorities, was found not to have engaged in statutorily protected activity. *Blackford v. Battelle Mem'l Inst.,* 57 F. Supp.2d 1095, 1100 (E.D. Wash. 1999). Considering all facts and inferences in the light most favorable to Plaintiff, the conduct complained of remained a single incident. Plaintiff points to a reduction in work hours and her eventual termination, but fails to allege any facts that indicate any conduct subsequent to July 8, 2003, was based on her status as a white female. Therefore, the Court finds Plaintiff failed to demonstrate an arguable violation of the law or conduct that a reasonable person could find constituted a discriminatory employment practice. Consequently, Defendant's Motion for Summary Judgment with respect to Plaintiff's retaliation claim under WLAD is granted.

## VI. Retaliation Claim Based on Section 1981

Establishing a prima facie case of retaliation under Title VII is similar to the requirement for retaliation under WLAD: the Plaintiff must

demonstrate (1) she engaged in activity protected under Title VII, (2) her employer subjected her to an adverse employment action, and (3) the employer's action is causally linked to the protected activity. *Jurado v. Eleven-Fifty Corp.,* 813 F.2d 1406, 1411 (9th Cir. 1987). However, establishing a retaliation claim under § 1981 may be more complicated as there are no underlying standards on which to base the determination of whether the plaintiff engaged in protected activity. Under Title VII, filing a complaint with the Equal Employment Opportunity Commission regarding an employer's violation of Title VII is clearly a statutorily protected activity. 42 U.S.C. 2000e-3(a). Making an informal complaint to a supervisor can also constitute a protected activity under Title VII. *E.E.O.C. v. Hacienda Hotel,* 881 F.2d 1504, 1514 (9th Cir. 1989). However, not every complaint made to a superior implicates Title VII or § 1981. *See Jurado,* 813 F.2d at 1411-1412 (finding a complaint to Plaintiff's superior regarding an English-only on-air requirement at a radio station does not constitute protected activity).

Without ruling on the propriety of the interpretation, the Supreme Court has acknowledged that the Ninth Circuit applies Title VII's employee protections against opposition activity not only to violations of the law, but to practices that the employee could reasonably believe were unlawful. *Clark County School Dist. v. Breeden,* 532 U.S. 268, 270 (2001).

In *Breeden*, a male supervisor and a male employee reviewed psychological evaluations for job applicants with a female employee. *Id.* at 269. One evaluation included the following comment that an applicant had made to a coworker, "I hear making love to you is like making love

10

to the Grand Canyon." *Id.* The supervisor read the comment out loud and looked to the female employee saying that he did not know what the comment meant. *Id.* The other male employee said, "Well, I'll tell you later," and both men chuckled. *Id.* The female employee made numerous complaints about the incident. *Id.*

In reviewing the employee's claim that she engaged in protected opposition activity under Title VII by complaining about the incident, the Supreme Court found that "no one could reasonably believe that the incident recounted above violated Title VII." *Id.* at 270. The Supreme Court reversed the Ninth Circuit, granting the defendant's motion for summary judgment on the issue of retaliation under Title VII, concluding that courts must look at all the circumstances, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance . . . .'" *Id.* at 271.

The instant case is similar in that no reasonable person could believe that Mr. Valencia's singular comment about Mexicans thinking Plaintiff was lazy, and his discussion that same day with Ms. Saenz, constitute a violation of § 1981 or create a hostile working environment. Because no reasonable person could conclude the incident rises to the level of a violation of § 1981, the underlying complaint does not constitute statutorily protected activity. As the underlying complaint does not constitute statutorily protected activity, Plaintiff cannot make out a claim of retaliation under § 1981. Therefore, Defendant's Motion for Summary Judgment with respect to Plaintiff's retaliation claim under § 1981 is granted.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment **(Ct. Rec. 43)** is **GRANTED.**

2. **Judgment** is to be entered in Defendant's favor with prejudice.

3. This file shall be **CLOSED,** and all pending motions **DENIED AS MOOT.**

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide copies to counsel.

**DATED** this <u>6th</u> day of November 2006.

<u>s/Edward F. Shea</u>
EDWARD F. SHEA
United States District Judge

Q:\Civil\2005\5059.MSJ.wpd